**BRAMWELL, State Superintendent of Banks, of Oregon, v. CONQUEST. (No. 7936.)**

Court of Civil Appeals of Texas. San Antonio. Feb. 8, 1928.

1. **Contracts ☞101(2)—Law of place of contract will not be enforced in state where contract contravenes laws and public policy of forum.**

While generally laws of place of contract prevail when different from those of forum, yet law of place of contract will not be enforced in state where contract contravenes laws and public policy of forum.

2. **Husband and wife ☞56—Immunities of coverture of woman domiciled in Texas will not be set aside to give effect to opposing laws of another state.**

Regulation conferring immunities of coverture of `married women domiciled in Texas will not be set aside by state courts to give effect to opposing laws of another state simply because contract was made there.

3. **Husband and wife ☞56—Notes of married woman, not for necessities or connected with her separate estate, are unenforceable in Texas, although executed in Oregon.**

Notes signed by married woman, not shown to have been given for necessities or in connection with her separate estate, will not be enforced in Texas, although they were executed in Oregon while maker was there on a temporary visit.

4. **Husband and wife ☞232(1)—Where married woman lived in Texas three years before trial, presumption is she lived in Texas when she visited Oregon and executed note.**

In action on a note executed by a married woman in Oregon, since defendant had been living in Texas for three years prior to trial, in absence of proof to contrary, presumption is indulged that she lived in Texas when she visited Oregon and executed note.

5. **Husband and wife ☞232(1)—Burden rested on plaintiff to show cause of action against married woman in Texas on contract not joined in by husband.**

In action on a note executed by a married woman who was a resident of Texas, while visiting in Oregon, burden rested on plaintiff to show cause of action on a contract executed by a married woman without her husband joining, since Oregon laws could not fix her liability under laws of her residence.

Appeal from District Court, Hidalgo County; J. E. Leslie, Judge.

Action by Frank C. Bramwell, as Superintendent of Banks of the State of Oregon, against Minnie Conquest. From a judgment for defendant, plaintiff appeals. Affirmed.

W. R. Montgomery, W. H. Sadler, and J. C. Hall, all of Edinburg, for appellant.

Ramsower & Seawell, of McAllen, for appellee.

FLY, C. J. Appellant, describing himself as superintendent of banks of the state of Oregon, then in charge of the Western State Bank, which was insolvent, but which formerly had done business in Newport, Or., by virtue of authority obtained from the state of Oregon, sued Minnie Conquest and her husband, Lee Conquest, and Lottie Ashcroft and her husband, George Ashcroft, on a promissory note for $7,327, executed by Minnie Conquest, in Oregon, to Lottie Ashcroft, and transferred by the Ashcrofts to the Western State Bank of Oregon. Minnie Conquest answered by general demurrer, special exceptions, general denial, and pleaded coverture at the time and since the note was executed. The court heard the cause and rendered judgment that appellant take nothing by his suit and pay all costs of suit. Appellant dismissed as to Lee Conquest.

On January 15, 1921, Minnie Conquest executed a promissory note at Newport, Or., for $7,327, payable five years after date to the order of Lottie Ashcroft. Mrs. Conquest was the wife of Lee Conquest at the time and had been for a number of years, and the note was executed without his knowledge or consent. She swore that she was not residing in Oregon at the time. In his findings of fact the court found that Minnie Conquest and her husband had been living in Hidalgo county, Tex., for three years before the time of the trial, that is, since 1924, but no mention is made of their residence before that time, and the court in his conclusions of law stated that it was "not shown where she resided at the exact time of the execution of said note."

[1] The court indulged in the presumption "that, wherever she did so reside, the laws would be the same as that of Texas, and hence has no liability on the note." Mrs. Conquest did not reside in Oregon, but went there for only a few weeks to see her father, who was sick. The only place in which she was shown to reside was Texas, and she had no separate estate. The husband knew nothing of the promissory note which was executed by his wife to her sister. While it is doubtless the general rule that the laws of the place of the contract will prevail, when different from those of the forum, yet there are exceptions to the rule; one of them that the law of the place of contract will not be enforced in a state where the contract contravenes the laws and public policy of the place of the forum. In the case of Union Trust Co. v. Grosman, 245 U. S. 412–416, 38 S. Ct. 147, 62 L. Ed. 368, suit was instituted in a federal district court of North Texas, upon two promissory notes executed by Grosman, and his wife, who gave her guaranty in Chicago, lived in Texas, and both were temporarily in Illinois. The Supreme Court held that the contract could not be enforced in Texas against the married woman. The court said:

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes.

"But when the suit is brought in a court of the domicile there is no room for doubt. It is extravagant to suppose that the courts of that place will help a married woman to make her property there liable in circumstances in which the local law says that it shall be free, simply by stepping across a state line long enough to contract. * * * There is nothing opposed to this view in those decisions in which the courts have enforced similar contracts of women domiciled where the law allowed such contracts to be made. It is one thing for a court to decline to be an instrument for depriving citizens belonging to the jurisdiction of their property in ways not intended by the law that governs them, another to deny its offices to enforce obligations good by the lex domicilii and the lex loci contractus against women that the local laws have no duty to protect."

The reason for such a ruling is apparent, because otherwise the peculiar laws of Texas protecting women in their property rights, and against improvident contracts might be greatly impaired if not nullified, if such women could be found in other states, where they are not protected, and induced to enter into contracts not permitted in Texas, and then come into Texas and seek to enforce laws of the other state which are repugnant to our laws, and subversive of public policy. Speaking of the Grosman Case, just considered, Judge Hodges in the case of Taylor v. Leonard (Tex. Civ. App.) 275 S. W. 134, said:

"While the facts involved in the foregoing case were somewhat different from those here under consideration, the court announced the rule that, where a married woman's obligation is sought to be enforced in the courts of her domicile, her liability should be controlled by the laws of the domicile."

Again, the Texas court said:

"The fact that the contract of a married woman is only voidable, and not void when made, is of no importance in the decision of this question. If her contract is voidable only, she is not required to repudiate it until called upon to perform it. The proper time for the exercise of her option is usually when legal enforcement is sought. In this case Mrs. Taylor, at the proper time and in the proper manner interposed her plea of coverture, which was in legal effect a timely repudiation of her California contract."

The contract in the cited Texas case was one signed by husband and wife, while temporarily residing in California.

[2] It is undoubtedly the true doctrine, as well stated by Judge Hodges, that:

"A regulation conferring the immunities of coverture on married women domiciled in this state will not be set aside by the courts of the state in order to give effect to opposing laws of another state simply because the contract was made in the other state. The contract of a married woman made in California is entitled to no higher respect by our courts than is given to the same character of contracts made in this state."

Over one hundred authorities are cited by appellant, some of which are not accessible to this court, but not one of them consulted is applicable to the facts, except those that sustain the judgment of the lower court. The cases of Merrielles v. State Bank of Keokuk, 5 Tex. Civ. App. 483, 24 S. W. 564, and Walker v. Goetz (Tex. Civ. App.) 218 S. W. 569, are reviewed in the cited case of Taylor v. Leonard, and it is conclusively shown that the facts were quite different from the facts of that case, as they are totally different from the facts of the case before this court. As said by the court in the Taylor v. Leonard Case:

"It will be observed that in each of these cases the legal domicile of the husband and wife, both at the time the contract was made and the judgment rendered, was in a foreign state, whose laws allowed married women to contract as a feme sole. In each instance the situation presented was one in which a nonresident married woman was endeavoring to escape the laws of her domicile by invoking different laws of another state."

[3] No such facts are presented in this case. Mrs. Conquest had never had a domicile in Oregon, and is invoking the law of her domicile. No Texas case has been brought to the notice of this court, that holds that a married woman on a temporary visit to a state like Oregon or California, whose laws as to married women are radically different from those of Texas, can sign promissory notes not shown to be given for necessaries, or in connection with her separate estate, and that the courts of Texas will lend themselves to enforce her contracts, although obnoxious to Texas laws.

[4, 5] The statement of facts is very unsatisfactory. It does not disclose the residence of Mrs. Conquest in 1921, when she executed the note in Oregon. It does show, however, that she has never lived in Oregon and that for three years prior to the time of trial she and her husband lived in Hidalgo county. Appellant alleged that the Conquests were "residents of the county of Hidalgo and state of Texas," but made no effort to show that either of them ever resided in Oregon. Appellant was confronted, on coming into a Texas court, with the fact that he was suing a married woman in the state of her domicile and seeking to enforce a contract made by her contrary to public policy and the law of her domicile. Charged with this state of affairs, he should have alleged and proved either that the Conquests resided in Oregon at the time the contract was executed, or at least was not residing in Texas at that time. Minnie Conquest had been living in Hidalgo county for three years prior to the date of the trial, and, in the absence of any proof to the contrary, the presumption will be indulged that she lived in Texas when she visited Oregon and executed the note. The burden

rested on appellant to show a cause of action against a married woman residing in Texas on a contract executed by the married woman without being joined by her husband. The laws of Oregon did not and could not fix the liability of a married woman under the laws of Texas, where she resided. There is no allegation that Minnie Conquest ever lived in Oregon but merely that she executed the note there, and it is assumed in the petition that the laws of Oregon would bind a married woman, temporarily in Oregon, regardless of the laws of her domicile. This is indicated by the dismissal of the husband from the suit and attempting to prosecute a claim against a married woman without joining her husband —this in the face of Texas laws which require that the husband shall be joined in suits for separate debts and demands against the wife. Rev. Stats. 1925, art. 1985; Taylor v. Hustead (Tex. Com. App.) 257 S. W. 232. Under Texas law a husband could not be dismissed from a suit and claim prosecuted against the wife alone. Appellant seeks to avoid the force of this law by giving an appeal bond payable to both husband and wife, although in his conclusions of law the court stated that Lee Conquest had been dismissed from the suit. Repeating the quotation from Taylor v. Leonard, herein cited, we reiterate:

"A regulation conferring the immunities of coverture on married women domiciled in this state will not be set aside by the courts of the state in order to give effect to opposing laws of another state simply because the contract was made in the other state."

The judgment will be affirmed.