## WELLS FARGO BANK & UNION TRUST CO. v. TITUS et ux.

### No. 106.

District Court, S. D. Texas Corpus Christi Division.

Aug. 29, 1941.

On Motion for New Trial Sept. 22, 1941.

Kleberg, Eckhardt & Lowe, of Corpus Christi, Tex., for plaintiff.

[8] In re Hartman-Blanchard Co., Inc., supra; In re Louis Elting, Inc., supra.

172

Neel, King & Rachal, of Corpus Christi, Tex., for defendants.

ALLRED, District Judge.

This case has been submitted upon a pretrial stipulation.

Plaintiff, a California corporation, sues defendants, residents of Texas, upon separate written contracts of guaranty, dated September 25, 1925, guaranteeing the payment of all indebtedness incurred by the East Side Investment Co., up to the amount of $205,000, with interest thereon. A balance of $156,905.72 is owing on said indebtedness and interest thereon to July 11, 1940, brings it up to a total of $213,836.64. The obligation matured more than four years prior to the institution of this suit.

The contracts, performable in California, were executed while defendants were there temporarily. At that time they were residents of Washington, D. C., and so continued until 1935 when they moved to Texas, where they have since resided.

Alice Titus is the wife of defendant Louis Titus and was his wife at the time she executed the contract sued upon; her disabilities as a married woman have never been removed, the undertakings in the contract were not for necessaries or incurred in the management, control or disposition of her separate property.

It is provided in paragraph 1 of the contracts, in part, as follows:

"For and in consideration of One Dollar ($1.00) in hand paid * * * by Wells Fargo Union Bank and Trust Co. * * * and the present forebearance of said bank to sue on any of the past due indebtedness of the debtor hereinafter mentioned, and in further consideration of loans to be hereafter made by said bank to said debtor and to promote the credit standing and borrowing power of said debtor, the undersigned hereby guarantees unto said bank, its successors and assigns, as a continuing guaranty and *irrespective of any statute of limitations,* and unconditionally and at all times the prompt payment * * * of any and all indebtedness which East Side Investment Co. may now or at any time hereafter owe to said bank to the extent of and not exceeding the sum of Two Hundred Five Thousand Dollars ($205,000.00), with interest thereon." (Italics supplied.)

Defendants plead the Texas statutes of limitation[1]; and defendant Alice Titus pleads coverture.

The parties have stipulated that plaintiff is entitled to judgment unless precluded by the Texas statutes of limitation and unless precluded as to Alice Titus by her plea of coverture.

Both defenses must be ruled by Texas law and Texas decisions, Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487. Griffin, Adm'r v. McCoach, Trustee, 61 S.Ct. 1023, 85 L. Ed. 1481, 134 A.L.R. 1462, decision dated June 2, 1941.

It is settled that an action brought in this State is governed by the Texas statutes of limitation and not by the law of the place where the cause of action arose, 28 Tex.Jur. § 17, pp. 91, 92; this is in accordance with the rule that the lex fori is controlling as to remedy, 9 Tex.Jur. Sec. 13, p. 367. But here the contract of guaranty is a continuing one "irrespective of any statute of limitations." Such an agreement, to waive the statute in advance, is valid in California, Dexter v. Pierson, 214 Cal. 247, 4 P.2d 932, Brownrigg v. DeFrees, 196 Cal. 538, 238 P. 714.

But in Texas a prior agreement to waive the statute of limitations is "contrary to public policy, and subversive of a wholesome statute, and should not be upheld." Nunn v. Edmiston, 9 Tex.Civ.App. 562, 29 S.W. 1115, 1116; Young v. Sorenson & Hooper, Tex.Civ.App., 154 S.W. 676[2]. These cases, however, deal only with contracts *made in Texas, to be executed in Texas.* No Texas court has expressly ruled on the validity of an agreement,

---

[1] Art. 5527, Vernon's Civil Statutes, reading in part as follows: "There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description: 1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

[2] These decisions, by courts of civil appeals, have never been reviewed by the Supreme Court but, if applicable to the facts, control the Federal Court, West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Six Companies of California v. Joint Highway Dist. No. 13, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284; Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327.

made and to be performed in another state, to waive, in advance, the statute of limitations. The Texas courts might validly hold that such an agreement contravenes public policy. Griffin v. McCoach, supra[3]. The fact remains, however, that they have not done so. Whether this Court should extend the doctrine can perhaps be determined by reference to holdings on analogous questions.

 The general rule is that a contract valid where made is valid everywhere, 9 Tex.Jur. § 9, pp. 360, 361, and authorities there cited. This rule of comity extends ordinarily only to rights; it does not embrace remedies, 9 Tex.Jur. § 4, p. 356. In Chicago, R. I. & P. Ry. Co. v. Thompson, 100 Tex. 185, 97 S.W. 459, 7 L.R.A.,N.S., 191, 123 Am.St.Rep. 798, it was held that a contract of employment, providing that any suit for injuries should be barred unless the servant gave notice of his claim within thirty days, was valid notwithstanding the provision of a Texas statute that such a stipulation should be void; and in Hastings v. Bushong, Tex.Civ.App., 252 S.W. 246, full faith and credit was given to an Illinois judgment taken upon confession of an attorney authorized by the provisions of a note executed and to be performed in Illinois, although such a confession of judgment is violative of a Texas statute. The same rule is recognized, but not applied on the facts (because the contract was performable in Texas), in Bernard Gloeckler Co. v. Baker Co., Tex.Civ.App., 52 S.W. 2d 912.

██ Generally those cases holding foreign contracts void, because violative of public policy in the state of the forum, have dealt with things positively prohibited by law, or violative of public morals or destructive of its settled policy. "It is for the state to say whether a contract contrary to such a statute or rule of law is so offensive to its view of public welfare as to require its courts to close their doors to its enforcement." Griffin v. McCoach, supra [61 S.Ct. 1027, 85 L.Ed. 1481].

██ Here the challenged provision of the contracts is not violative of either the Constitution or statutes of Texas; it is not violative of the State's public policy announced in any decision applicable to a contract made and to be performed beyond its borders. The provision is valid where it was made and to be performed. There is nothing immoral in it. It is no more "offensive" to the public welfare of Texas than a foreign contract shortening the period within which suit may be filed, Home Ins. Co. v. Dick, supra; Suggs v. Travelers' Ins. Co., 71 Tex. 579, 9 S.W. 676, 1 L.R.A. 847. It has reference to nothing to be done in Texas. No subterfuge is alleged or shown. It deals with a right which may be waived by subsequent agreement or failure of timely assertion, 28 Tex.Jur. § 146, p. 245; with rights which the parties may estop themselves from setting up. 28 Tex. Jur. § 149. Such a contract, unlike the usual agreement to violate the anti-trust or liquor laws, or affecting the administration of justice, or immoral in character, is hardly "so offensive to * * * public welfare as to require * * * [Texas] courts to close their doors to its enforcement."

██ The limitation of the authority of married women to contract is more deeply engrained in Texas public policy than the rule prohibiting prior agreements to waive statutes of limitation. This policy is proclaimed by statute and discussed in practically all the cases. The courts have so scrupulously concerned themselves with preservation of the separate estates of married women that they have not only invalidated contracts made and to be performed in Texas, but those executed while temporarily visiting in another state, Union Trust Co. v. Grosman, 245 U.S. 412, 38 S. Ct. 147, 62 L.Ed. 368; or made while temporarily *residing* in California and to be performed, in part at least, in that state, Taylor et al. v. Leonard, Tex.Civ.App., 275 S.W. 134; or made in Oregon by a married woman who had resided in Texas for three years prior to the trial, where the record did not show that she resided in Oregon, or some other state, at the time of its execution. Bramwell v. Conquest, Tex. Civ.App., 2 S.W.2d 995, 996.

But no court has ever held that a contract, valid where made and to be performed, and valid under the laws of the state of a married woman's actual residence, will not be upheld in Texas. Indeed, the contrary is clearly indicated by the three cases just cited, particularly Bram-

---

3 Compare Home Ins. Co. v. Dick, 281 U.S. 397, 399, 50 S.Ct. 338, 342, 74 L. Ed. 926, 74 A.L.R. 701, "And, *in the absence of a contractual provision*, the local statute of limitation may be applied to a right created in another jurisdiction even where the remedy in the latter is barred." (Italics supplied.)

well v. Conquest. In the latter the Court of Civil Appeals, in denying recovery, says that the plaintiff "should have alleged and proved either that the Conquests resided in Oregon at the time the contract was executed, or at least [were] not residing in Texas at that time." Moreover in Shurter et al. v. Ricker, 5 Cir., 62 F.2d 489, 490, certiorari denied, 289 U.S. 732, 53 S.Ct. 593, 77 L.Ed. 1481, the contract of a married woman, residing in New York, and to be performed there, was held enforceable in Texas since it was a valid undertaking in the state where it was executed and to be performed. The Court says:

"If it was a Texas contract, the suit at once fails, regardless of any other question involved in it, because under the laws of that state it was unenforceable, since Mrs. Shurter, the alleged debtor, was a married woman."

In other words, according to this decision, even though defendant was a nonresident at the time of executing the contract and at the time of suit, the court would have refused enforcement in Texas if the contract was to be *performed here*.

■ Defendants do not dispute that the guaranty contract in question was valid in California where it was executed and to be performed[4]; or in Washington, D.C., the place of their residence at the time. In my judgment, however, it is doubtful that the guaranty contract of Alice Titus would have been valid under the law in the District of Columbia at the time of its execution in 1925 if it had called for performance there. § 1155, D.C.Code, then provided that no married woman should have power to make any contract as surety or guarantor. This public policy of the District of Columbia was recognized and given full effect by the Court of Appeals of the District of Columbia in Schwartz et al. v. Sacks et al., 55 App.D.C. 87, 2 F.2d 188; Columbia Nat. Bank of Washington et al. v. Shacklett, 57 App.D.C. 130, 18 F.2d 172; Carroll v. Elkins, 58 App.D.C. 265, 29 F.2d 638, 639. This limitation was repealed by Congress in 1926 Public No. 312, Chapter 419, 44 U.S.Stat. p. 676, D.C.Code 1929, T. 14, § 43, and under this amendment married women were given unrestricted power to make contracts of guaranty or as accommodation endorsers, Jett et al. v. Montague Mfg. Co., 61 App.D.C. 277, 61 F.2d 918. However, the passage of this amendatory act did not validate surety contracts executed by married women prior thereto, Bradbury v. Howard, 58 App.D.C. 383, 31 F.2d 222; Steele v. Harrison et al., 59 App.D.C. 69, 32 F.2d 965; but it was held in Kiess v. Baldwin, 64 App.D.C. 66, 74 F. 2d 470, that the liability of a married woman on a note dated and made payable in Washington, D.C., but signed in Pennsylvania where the woman resided at the time, was determined by the law of the District of Columbia. This decision was based upon the proposition that the maker of a note will be held liable according to the law of the *place of performance*.

Since the present contract was made and to be performed in California, and for that reason would have been enforced in the District of Columbia, the place of defendants' residence, the public policy of Texas does not prohibit its enforcement here.

Judgment will be for plaintiff in the full amount prayed for, plus interest thereon. Counsel will prepare an order accordingly and submit it to the Clerk.

Memorandum on Motion for New Trial.

■ Defendant Alice Titus, in a separate motion for new trial, particularly challenges the original opinion in this case because the Court took judicial notice of the statutes and decisions of the District of Columbia. Pointing to a provision in the pre-trial stipulations that the Court might consider the statutes and decisions of California without proof thereof, defendant says that it was not "so stipulated as to the law of the District of Columbia, and therefore it was incumbent upon plaintiff * * * to plead and prove" that law.

Counsel's stipulation was not necessary since the Federal Courts, in exercising original jurisdiction, take judicial notice of the law of every State, Gallup v. Caldwell, 3 Cir., 120 F.2d 90, and authorities therein cited.

As pointed out in the original memorandum, defendants did not dispute that the contract in question was valid in California (where it was executed and to be performed) or in Washington, D.C., (the place of their residence at the time). However, in view of the language used by the Texas Court of Civil Appeals in Bramwell v. Conquest, 2 S.W.2d 995, 996, to the effect that plaintiff, if he was to prevail, should have alleged and proved that the contracting parties resided in Oregon at the time the

---

[4] Sec. 158, Civ.Code of California; Hammond Lumber Co. v. Danziger, 2 Cal.App.2d 197, 37 P.2d 517.

contract was executed," or at least [were] not residing in Texas at that time," this Court discussed the statute and decisions of the District of Columbia; and pointed out that, under Kiess v. Baldwin, 64 App.D.C. 66, 74 F.2d 470, the test of liability, in the District of Columbia, was the law of the *place of performance*. The contract in question being admittedly valid under the laws of California (the place of performance), and therefore enforceable in the District of Columbia (where defendants resided), it is, therefore, enforceable in Texas, Bramwell v. Conquest, supra; Shurter et al. v. Ricker, 5 Cir., 62 F.2d 489.

The motion of defendant Alice Titus for new trial and to set aside the previous judgment of the Court will, therefore, be overruled. Counsel for plaintiff may prepare an order accordingly and submit it to the Clerk for entry.